UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AUDREY JONES, NICHOLAS JONES, GREG SHROCK, and MARIANELLY SHROCK, <br><br>            Plaintiffs, <br><br> v. <br><br> KIAME MAHANIAH, Secretary of the Massachusetts Department of Health and Human Services, in his official capacity; STAVERNE MILLER, Commissioner of the Massachusetts Department of Children and Families, in her official capacity; LORI ANN DIBELLA, Manager of the Northern Regional Licensing Unit of the Massachusetts Department of Children and Families, in her official capacity; and SARAH PETTY, Supervisor of the Northern Regional Licensing Unit of the Massachusetts Department of Children and Families, in her official capacity; <br><br>            Defendants. | NO. 4:25-cv-12449 |

## DEFENDANTS' ANSWER TO PLAINTIFFS' VERIFIED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Defendants Kiame Mahaniah, Secretary of the Massachusetts Department of Health and Human Services ("Secretary Mahaniah"); Staverne Miller, Commissioner of the Massachusetts Department of Children and Families ("Commissioner Miller"); Lori Ann DiBella, Manager of the Northern Regional Licensing Unit of the Massachusetts Department of Children and Families ("Ms. DiBella"); and Sarah Petty, Supervisor of the Northern Regional Licensing Unit of the Massachusetts Department of Children and Families ("Ms. Petty"), all in their official capacities (collectively, "Defendants"), submit the following Answer in response to the Verified Complaint for Declaratory and Injunctive Relief (the "Complaint") filed by Audry Jones ("Mrs. Jones");

1

Nicholas Jones ("Mr. Jones"); Greg Schrock ("Mr. Schrock"); and Marianelly Schrock ("Mrs. Schrock") (collectively, "Plaintiffs").    The primary headings contained in the Complaint are repeated here for convenience, and any allegations contained in those headings or any subheadings are denied.

### INTRODUCTION

1.    Defendants admit that the Massachusetts Department of Children and Families ("DCF") is responsible for licensing foster, pre-adoptive, and kinship families (hereinafter, "resource families") in the Commonwealth of Massachusetts, and that DCF conducts post-licensing assessments of licensed resource families.    Defendants further admit that when a licensed resource family fails to comply with applicable licensing standards set forth in regulations and policies, DCF may determine that the family should not continue to be licensed.    Except as expressly admitted, Defendants deny the remaining allegations in paragraph 1 of the Complaint, including the Complaint's characterization of DCF's licensing standards, the Complaint's allegation that there is a "foster-care crisis" in Massachusetts, and the allegation that DCF is making licensing decisions based upon religious beliefs or affiliations.

2.    Defendants admit that DCF licensed Plaintiffs as resource families in the Commonwealth of Massachusetts, and that Plaintiffs were not the subject of any supported allegations of abuse or neglect.    Defendants further admit that Plaintiffs hosted children in their respective homes, including that the Joneses provided care for 6 children through foster care and respite placements and that the Schrocks provided care for 4 children through foster care placements, as well as additional children through respite and emergency babysitting services. Except as expressly admitted, Defendants deny the remaining allegations in paragraph 2.

3.    Defendants admit that Plaintiffs have refused to sign the document entitled "An

agreement between the Commonwealth of Massachusetts Department of Children and Families and Foster/Pre-Adoptive/Kinship Parents" (the "foster parent agreement"), which is attached as Exhibit 2 to the Complaint.    Defendants further admit that the Schrocks are no longer a licensed family resource, while the Joneses are a licensed resource family.    Further answering, Defendants admit that by signing the foster parent agreement, a resource family agrees to "[s]upport, respect, and affirm the foster child's sexual orientation, gender identity, and gender expression."    The Complaint's use of the defined term "Gender Identity Policy" is vague and purports to characterize the contents of multiple documents, including the foster parent agreement, as well as various regulations and policies that apply to resource families, all of which are written documents that speaks for themselves.    Defendants deny the Complaint's characterizations of those documents.    Except as expressly admitted, Defendants deny the remaining allegations in paragraph 3 of the Complaint.

4.    Defendants deny that DCF's regulations or policies violate the United States Constitution.    The Complaint's use of the defined term "Gender Identity Policy" is vague and appears intended to encompass the contents of the foster parent agreement, as well as various regulations and policies that apply to resource families, all of which are written documents that speaks for themselves.    Defendants deny the characterizations of those documents in paragraph 4.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations in paragraph 4 regarding Plaintiffs' beliefs.    Except as expressly admitted, the remaining allegations in this paragraph are denied.

5.    Defendants deny that DCF's regulations or policies violate the United States Constitution.    Moreover, DCF's regulations and policies are written documents that speak for themselves, and Defendants deny the characterizations of those documents in paragraph 5.

Defendants admit that DCF's assessments of resource families, including placement decisions for licensed resource families, are specific to each resource family, and that there are necessarily some individualized assessments at various points in those very complex procedures.    Except as expressly admitted, the remaining allegations in paragraph 5 are denied.

6.    The allegations in paragraph 6 refer to the Code of Massachusetts Regulations ("CMR") and potentially the foster parent agreement attached as Exhibit 2 to the Complaint, which speak for themselves.    Defendants admit that, under the CMR, resource families must demonstrate the ability to promote the physical, mental, and emotional well-being of a child placed in their care, including supporting and respecting a child's sexual orientation or gender identity. Defendants admit that a licensed resource family must comply with applicable licensing standards set forth in regulations and policies.    Except as expressly admitted, Defendants deny the remaining allegations in paragraph 6.

7.    Defendants deny that that DCF's regulations or policies violate the United States Constitution.    The Complaint's use of the defined term "Gender Identity Policy" is vague and appears intended to encompass the contents of the foster parent agreement attached as Exhibit 2 to the Complaint, as well as various unidentified regulations and policies that apply to resource families. Defendants deny the remaining allegations in paragraph 7, including its characterization of DCF's regulations and policies.

8.    Denied.

## JURISDICTION AND VENUE

9.    Admitted.

10.    Admitted.

11.    Admitted only that this Court possesses these powers.

4

12.     The factual allegations contained in this paragraph are denied.     Defendants do not deny that venue is proper.

### PLAINTIFFS AND DEFENDANTS

13.     Upon information and belief, admitted.

14.     Upon information and belief, admitted.

15.     Upon information and belief, admitted.

16.     Upon information and belief, admitted.

17.     Defendants admit that Secretary Mahaniah is the Secretary of the Massachusetts Executive Office of Health and Human Services, that his office is located in Boston, Massachusetts, and that in his role he acts as the executive officer in all matters pertaining to the administration, management, operation, regulation, planning, fiscal and policy development functions and affairs of the departments, commissions, offices, boards, divisions and other agencies within the executive office.     Except as expressly admitted, the remaining allegations in this paragraph are denied.

18.     Defendants admit that Commissioner Miller is the Commissioner of DCF, that her office is located in Boston, Massachusetts, and that in that role, DCF is under Commissioner Miller's direction, supervision and control.     Except as expressly admitted, the remaining allegations in this paragraph are denied.

19.     Defendants admit that Ms. DiBella manages the Northern Regional Licensing Unit of DCF, and that she participated in the determination that the Schrocks should not continue to be licensed as a resource family.     Except as expressly admitted, the remaining allegations in this paragraph are denied.

20.     Defendants admit Ms. Petty is a supervisor in the Northern Regional Licensing Unit

of DCF, and that she participated in the determination that the Schrocks should not continue to be licensed as a resource family.   Except as expressly admitted, the remaining allegations in this paragraph are denied.

21.     Defendants admit that all claims in Plaintiffs' Complaint are asserted against Defendants solely in their official capacities.   Defendants deny that the Plaintiffs are entitled to any relief from Defendants in their official capacities.

## FACTUAL ALLEGATIONS

22.     Defendants admit that DCF works to recruit appropriate resource families who can act as possible placements for children in DCF's custody.   Except as expressly admitted, Defendants deny the characterizations and remaining allegations in paragraph 22.

23.     The allegations in paragraph 23 reference and cite the contents of a public report issued by DCF relevant to the third quarter of Fiscal Year 2025.   Defendants admit that DCF issues such public reports.   Further answering, Defendants aver that many licensed resource families provide care for more than one foster child at a time, including siblings.   Further answering, Defendants aver that certain children in DCF's custody present unique circumstances or challenges, such as physical health conditions, mental health conditions, and/or behavioral histories, that may make placement with any resource family inappropriate.   Except as expressly admitted, Defendants deny the allegations in paragraph 23, including any express or implied characterization or conclusion based upon a comparison of the total number of children in the Massachusetts foster system, the number of licensed resource families, and the placement type for such children.

24.     The allegations in paragraph 24 reference and purport to summarize an article written by Kay Lazar in the Boston Globe on April 6, 2019.   Defendants admit that this article

exists, and that the article speaks for itself.   Except as expressly admitted, Defendants deny the allegations in this paragraph, including that DCF is experiencing a "crisis," and to the extent the article is mischaracterized or misstated, or attributed to Defendants.

28.    The allegations in paragraph 25 reference and purport to summarize an article written by Kay Lazar in the Boston Globe on April 6, 2019.   Defendants admit that this article exists, and that the article speaks for itself.   Except as expressly admitted, Defendants deny the allegations in this paragraph.

26.    The allegations in paragraph 26 reference and purport to summarize an article written on the website of NBC Boston on September 12, 2023.   Defendants admit that this article exists, and that the article speaks for itself.   Defendants further admit that certain children in DCF's custody present unique circumstances or challenges, such as physical health conditions, mental health conditions, and/or behavioral histories that may make placement with any resource family inappropriate.   Further answering, Defendants admit that DCF utilizes a variety of short-term placements for foster children who are awaiting an appropriate long-term placement, which may or may not be with a resource family.   Except as expressly admitted, Defendants deny the allegations in this paragraph, including that DCF is experiencing a "crisis" and to the extent the article is mischaracterized or misstated, or attributed to Defendants.

27.    The allegations in paragraph 27 reference and quote an article written on the website of NBC Boston on September 12, 2023.   Defendants admit that the article exists and that the article speaks for itself.   Except as expressly admitted, Defendants deny the allegations in this paragraph.

28.    The allegations in paragraph 28 reference and purport to summarize a slide presentation on the website of an entity called HopeWell.   Defendants admit that the slide

presentation exists, and that it speaks for itself.    Except as expressly admitted, Defendants deny the allegations in this paragraph.

29.    Defendants deny that DCF's licensed foster homes are "often unsafe for children." Defendants admit that DCF works to identify and take appropriate action in response to alleged maltreatment of any foster child occurs.    The allegations in paragraph 29 reference an opinion article written by the editorial board of the Boston Globe on December 15, 2024, as well as certain data maintained by the U.S. Department of Health and Human Services from 2022.    Defendants admit that the article and the data exist, and they speak for themselves.    Except as expressly admitted, Defendants deny the allegations in paragraph 29, including to the extent the article or data are mischaracterized or misstated, or attributed to Defendants.

30.    Defendants admit that all resource families must comply with applicable licensing standards set forth in regulations and policies.    Except as expressly admitted, Defendants deny the allegations in paragraph 30, including the allegation that DCF's regulations and policies will "substantially narrow" the pool of eligible resource families.

31.    Denied.

32.    The allegations in paragraph 32 reference and purport to summarize what a law review article written by David M. Smolin in 2022 might "suggest[]."    Upon information and belief, Defendants admit that this law review article exists.    Except as expressly admitted, Defendants deny the allegations in this paragraph, including Plaintiffs' characterization of what "[s]cholarly examination" might "suggest."

33.    Defendants admit that becoming a licensed family resource is a multi-step process, and that DCF's Policy on Licensing of Foster, Pre-Adoptive, and Kinship Families, effective Feb. 27, 2023 (the "DCF Licensing Policy"), which is attached as Exhibit 1 to the Complaint, generally

describes the process.

34.     Defendants admit that the quoted text appears in the DCF Licensing Policy, and that DCF does not deny any adult the opportunity to become a foster family on the basis of race, color, age, biological sex, ethnicity, marital status, sexual orientation, gender identity or expression, religion, creed, ancestry, national origin, language, disability or veteran's status.

35.     Defendants admit that DCF holds information sessions for prospective resource families, and that prospective resources families must apply to become licensed.   Except as expressly admitted, the allegations in this paragraph are denied.

36.     Defendants admit that DCF performs background checks regarding the criminal and child welfare history of all household members age 15 and older, as well as younger household members if concerns exist, and that DCF also performs a home visit as part of the family resource licensing process.   Except as expressly admitted, the allegations in this paragraph are denied.

37.     Defendants admit that the quoted text appears in the DCF Licensing Policy, and that the caregiver training and assessment process typically follows the application review process. Except as expressly admitted, the allegations in this paragraph are denied.

38.     Defendants admit that DCF evaluates a prospective resource family's caregiving capacity by using certain protective factors identified in the DCF Licensing Policy, and that prospective resource families must also complete certain training before they may receive a license.   Except as expressly admitted, the allegations in this paragraph are denied.

39.     Defendants admit that, at a certain point in the process, a caregiver assessment is created for each prospective resource family that includes a variety of information, including a summary of information learned during interviews, observations, and contacts with references, and that the information gathered during this process covers a wide array of topics and may include

information communicated to DCF verbally and/or in writing.   Defendants further admit that the quoted text appears in the DCF Licensing Policy.   Except as expressly admitted, the allegations in this paragraph are denied.

40.   Defendants admit that DCF regulations apply to its licensing activities.   Except as expressly admitted, the allegations in this paragraph are denied.

41.   Defendants admit that the CMR contains requirements for resource families, and that the quoted text appears in the CMR.   Except as expressly admitted, the allegations in this paragraph are denied, including the allegation that the licensing requirements contained in 110 CMR 7.104 are subjective.

42.   Defendants admit that the CMR contains requirements for resource families, and that the quoted text appears in the CMR.

43.   Defendants admit that the CMR, including 110 CMR 7.104 and 7.105, contains several requirements for resource families.   Defendants deny that 10 CMR contains requirements for resource families.   Except as expressly admitted, the allegations in this paragraph are denied.

44.   Defendants admit that the CMR contains several requirements for resource families.   Defendants admit that 110 CMR 7.104(6) contains by reference to 110 CMR 7.105A an express waiver provision that applies only to child specific and kinship homes and only where "the applicant otherwise meets the eligibility criteria set forth for child specific and kinship applicants and a determination is made that it would be in the child's best interest to be placed in the applicant's home."   Defendants admit that 110 CMR 7.105(7) contains an express waiver provision under which "the Department may waive this requirement for kinship homes if the bedrooms provide at least 35 square feet per child, and shall accommodate no more than four children per bedroom."   Defendants admit that 110 CMR 7.105(12)(b) contains an express waiver

provision that allows the placement of additional children "when the placement of a child(ren) is in the best interest of the child(ren) and the Commissioner/designee has received a recommendation of a Department clinical review team and consulted with professionals or others involved with the child(ren)."   Defendants deny that any other subsections of 110 CMR 7.104 or 7.105 contain express waiver provisions.   Except as expressly admitted, the allegations in this paragraph are denied.

45.     Defendants admit that, during the licensing process, a caregiver assessment is created for each prospective resource family that includes a variety of information, including the family's application, criminal and child welfare history check results and documentation, a list of contacts with the family, a list of references and documentation, a summary of information learned in interviews, observations, and contacts with references, a training evaluation, a clinical formulation that assesses the family's caregiving capacity, the family's support plan, and a licensing recommendation, including the physical capacity of the home and any placement recommendations/specialties identified.   Except as expressly admitted, the allegations in this paragraph are denied.

46.     Defendants admit that, for families seeking to become licensed resource families, a Licensing Review Team ("LRT") examines information gathered throughout the recruitment, application review, and caregiver training and assessment stages and discusses, among other things, the family's skills, knowledge, and capacity to provide a physically and emotionally safe environment for children.   Defendants further admit that the LRT is empowered to modify, as needed, the licensing recommendation and training and support plan for each family, and to make a decision to approve or deny the prospective resource family or to defer decision making until additional information can be obtained.   Except as expressly admitted, the allegations in this

paragraph are denied.

47.    Defendants admit that DCF conducts post-licensing assessments of licensed resource families pursuant to 110 CMR 7.113.   Defendants admit that DCF strives to perform annual assessments in a timely manner, though it is often not possible to do so.

48.    Defendants admit that annual assessments of licensed resource families include a visit to the family's home, and that the quoted text appears in the DCF Licensing Policy.   Except as expressly admitted, the allegations in this paragraph are denied.

49.    Defendants admit that annual assessments of licensed resource families include an update to the caregiver assessment, and that the quoted text appears in the DCF Licensing Policy. Except as expressly admitted, the allegations in this paragraph are denied.

50.    Defendants admit that annual assessments of licensed resource families include a recommendation whether or not to continue licensing the family, and that the quoted text appears in the DCF Licensing Policy.   Except as expressly admitted, the allegations in this paragraph are denied.

51.    The allegations in paragraph 51 provide a conclusory and argumentative summary of the preceding paragraphs detailing the licensing regulations, policies, and procedures. Defendants admit that DCF's assessments of resource families are specific to each resource family, and that there are necessarily some individualized assessments at various points in those very complex procedures, but Defendants state that all resource families must meet the licensing requirements, unless an express waiver provision is provided as to a particular requirement and a waiver is justified under the regulatory standards.   Except as expressly admitted, the allegations in this paragraph are denied.

52.    Defendants admit that DCF's assessments of resource families are specific to each

resource family, and that there are necessarily some individualized assessments at various points in those very complex procedures, but Defendants deny that DCF allows its employees to use their "discretion" to apply DCF's licensing standards differently for different families. Except as expressly admitted, the allegations in this paragraph are denied.

53.    Defendants deny that DCF's regulations lack objective standards and deny that each of the criteria for licensure eligibility in 110 CMR 7.104(1) is subjective.    Further answering, Defendants state that all resource families must meet the licensing requirements, unless an express waiver provision is provided as to a particular requirement and a waiver is justified under the regulatory standards. Except as expressly admitted, the allegations in this paragraph are denied.

54.    Defendants admit that placement decisions for particular children necessarily involve some individualized assessments to ensure a good fit between a licensed resource family and a child in DCF's custody.    Except as expressly admitted, the allegations in paragraph 54 are denied.

55.    Defendants admit that a licensed resource family has the ability to decline placement of a foster child in their home, and that the quoted text in paragraph 55 appears in the CMR.    Further answering, Defendants admit that, in certain circumstances, DCF may determine that a resource family's decision to decline placement of a foster child in their home may warrant reassessment of that family to determine whether the family continues to comply with applicable licensing standards set forth in regulations and policies.    Except as expressly admitted, the allegations in this paragraph are denied.

56.    Defendants admit that licensed resource families have the ability to express their wishes about the type of child they want to foster and the capabilities of the resource family, and that the quoted text in paragraph 56 appears in the DCF Licensing Policy.    Further answering,

Defendants admit that, in certain circumstances, DCF may determine that a resource family's wishes about the type of child they want to foster and the capabilities of the resource family may warrant reassessment of that family to determine whether the family complies with applicable licensing standards set forth in regulations and policies.   Except as expressly admitted, the remaining allegations in paragraph 56 are denied.

57.    Defendants admit that DCF provides resource families with information concerning a potential placement, including information subjects in the text quoted in paragraph 57, which appears in the CMR.

58.    Defendants admit that, in the child placement process, all out-of-home placement decisions shall be made in the best interests of the child, based upon safety, well-being and permanency of the child and the child's individual needs, and that the health and safety of the child shall be of paramount concern to DCF and shall include the long-term well-being of the child. Further answering, Defendants admit that, in the child placement process, there are necessarily some individualized assessments at various points in those very complex procedures, and that the quoted text in paragraph 58 appears in the CMR.   Except as expressly admitted, the remaining allegations in this paragraph are denied.

59.    Defendants admit that a kinship family may include individual(s) licensed or approved to provide 24-hour out-of-home care for children in the custody or care of DCF, who are fictive kin who are not related to the child by blood, but who were known to the child prior to the placement.   Defendants admit that, pursuant to 110 CMR 7.108(1), a foster child in DCF's custody may be placed on an emergency basis in a kinship home that has not yet been licensed but has passed an initial eligibility screening, and that the regulations require that such homes become licensed if the foster child is to remain in the kinship home as a long-term placement.   Except as

expressly admitted, the remaining allegations in this paragraph are denied.

60.     Defendants admit that the quoted text in paragraph 60 appears in the CMR.

61.     Denied.

62.     Defendants admit that resource families are expected to sign and comply with the foster parent agreement, which is attached to the Complaint as Exhibit 2 and speaks for itself. Except as expressly admitted, the remaining allegations in paragraph 62 are denied.

63.     Defendants admit that the quoted text in paragraph 63 appears in the foster parent agreement, which is attached as Exhibit 2 to the Complaint.

64.     Defendants admit that DCF has an LGBTQIA+ Nondiscrimination Policy, effective June 30, 2022 ("LGBTQIA+ Nondiscrimination Policy"), which is attached as Exhibit 3 to the Complaint.     Except as expressly admitted, the remaining allegations in this paragraph are denied.

65.     Defendants admit that the quoted text in paragraph 65 appears in the foster parent agreement attached as Exhibit 2 to the Complaint.     Defendants deny that the LGBTQIA+ Nondiscrimination Policy's "plain terms" are limited exclusively to "how DCF will treat a foster child" and admit that the LGBTQIA+ Nondiscrimination Policy provides certain expectations for "[t]he Department, foster parents, and contracted service providers."     Ex. 3 at 4.     Defendants admit that the foster parent agreement incorporates certain elements of the LGBTQIA+ Nondiscrimination Policy and that resource families, as contracted service providers, are expected to comply with DCF policies.     Further answering, Defendants admit that supportive involvement from family is associated with better mental and physical health outcomes for LGBTQIA+ children.     Except as expressly admitted, the remaining allegations in this paragraph are denied.

66.     Defendants admit that the LGBTQIA+ Nondiscrimination Policy provides certain expectations for DCF, resource families, and contracted service providers, and that the quoted text

in paragraph 66 appears in Exhibit 3 to the Complaint.    Further answering, Defendants admit that supportive involvement from family is associated with better mental and physical health outcomes for LGBTQIA+ children.    Except as expressly admitted, Defendants deny the allegations in this paragraph, including the Complaint's characterization of the quoted text.

67.    Defendants admit that the LGBTQIA+ Nondiscrimination Policy provides certain expectations for DCF, resource families, and contracted service providers, and that the quoted text in paragraph 67 appears in Exhibit 3 to the Complaint.    Defendants further admit that the LGBTQIA+ Nondiscrimination Policy provides that DCF, resource families, and contracted service providers do not make attempts to convince LGBTQIA+ children/youth to reject or modify their sexual orientation, gender identity, or gender expression.    Further answering, Defendants admit that supportive involvement from family is associated with better mental and physical health outcomes for LGBTQIA+ children.    Except as expressly admitted, Defendants deny the allegations in this paragraph.

68.    Defendants admit that the foster parent agreement includes a provision stating that a resource family agrees to "[s]upport, respect, and affirm the foster child's sexual orientation, gender identity, and gender expression."    The Complaint's use of the defined term "Gender Identity Policy" is vague and purports to characterize the contents of multiple documents, including various regulations and policies that apply to resource families, all of which are written documents that speaks for themselves.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations in paragraph 68 regarding Plaintiffs' beliefs.    Except as expressly admitted, the allegations in this paragraph are denied.

69.    Defendants admit that resource families are expected to abide by the foster parent agreement, as well as DCF's policies concerning resource parents, and that a resource family's

inability to do so could impact their ability to be a licensed resource family.    Defendants further admit resource families must demonstrate the ability to promote the physical, mental, and emotional well-being of a child placed in their care, including supporting and respecting a child's sexual orientation or gender identity.    Except as expressly admitted, Defendants deny the remaining allegations in paragraph 69.

70.    Defendants admit that resource families are expected to abide by the foster parent agreement, as well as DCF's policies concerning resource parents, and that a resource family's inability to do so could impact their ability to be a licensed resource family.    Defendants further admit resource families must demonstrate the ability to promote the physical, mental, and emotional well-being of a child placed in their care, including supporting and respecting a child's sexual orientation or gender identity.    Except as expressly admitted, Defendants deny the remaining allegations in paragraph 70.

71.    Defendants admit that resource families are expected to abide by the foster parent agreement, as well as DCF's policies concerning resource parents, and that a resource family's inability to do so could impact their ability to be a licensed resource family.    Except as expressly admitted, Defendants deny the remaining allegations in paragraph 71.

72.    Upon information and belief, admitted.

73.    Defendants admit that Mr. and Mrs. Jones currently provide foster care to one child under the age of six who has been placed with the Joneses since May 2024.    Upon information and belief, Defendants admit that DCF's records reflect that the Joneses have provided care to 6 children through foster care and respite placements, including a previous placement of a child who was nine years old at the time of placement.    Upon information and belief, the Joneses have two biological children.    Except as admitted, the remaining allegations are denied.

74.    Denied.

75.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 75 of the Complaint.

76.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 76 of the Complaint.

77.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 77 of the Complaint.

78.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 78 of the Complaint.

79.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 79 of the Complaint.

80.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 80 of the Complaint.

81.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 81 of the Complaint.

82.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 82 of the Complaint.

83.    Defendants admit that, upon information and belief, the Joneses are unwilling to sign the foster parent agreement attached as Exhibit 2 to the Complaint.   Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations in paragraph 83 regarding "their religious beliefs."   Defendants admit that supportive involvement from family is associated with better mental and physical health outcomes for LGBTQIA+ children. Defendants admit that paragraph 83 purports to summarize various DCF regulations and policies,

which speak for themselves.   To the extent the allegations in paragraph 83 mischaracterize or misstate the contents of those documents, or their import, they are denied.   Except as expressly admitted, Defendants deny the allegations in this paragraph.

84.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 84 of the Complaint.

85.    Defendants admit that DCF provided Mr. and Mrs. Jones with a foster parent agreement in 2025 as part of their annual assessment.

86.    The allegations in paragraph 86 purport to summarize portions of a conversation between Mr. and Mrs. Jones (individually or together) and a "DCF licensing agent" during their annual assessment.   Defendants aver that DCF's records summarize a conversation between the Joneses and a DCF social worker regarding "why Audrey and Nick are unable to sign the agreement with line item 6 on page three" of the foster parent agreement, but Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 86 regarding whether Mrs. Jones described in full "the view recited in paragraphs 76-82" of the Complaint.   Except as expressly admitted, the remaining allegations in this paragraph are denied.

87.    Defendants aver that DCF's records reflect an email sent by a DCF social worker to the Joneses on July 8, 2025 with a list of questions "which may be helpful in discussing" the Joneses stated inability to sign the foster parent agreement and that the DCF social worker offered in that email for the Joneses to "send a response" or that they could "talk about it during the call" that previously been set up for several days later.

88.    Defendants aver that DCF's records reflect an email sent by Mrs. Jones to a DCF social worker on July 11, 2025, stating in relevant part that, "Based on our religious convictions we cannot my [sic] affirm or support someone along a lgbtq journey (for lack of a better word).

We would not be able to support a child dating someone the same sex. And we would not be able to affirm a child who wanted to use different pronouns etc."

89.    The allegations in paragraph 89 purport to summarize portions of a conversation between Mr. and Mrs. Jones (individually or together) and a "licensing agent."    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 89 related to that conversation.    Defendants aver that DCF's records indicate that a DCF social worker sent an email to Audrey Jones on July 9, 2025 that states, in relevant part, "All foster parents must sign the foster parent agreement as written, and affirming care is listed within the foster parent agreement (#6 on page 3- "support, respect, and affirm the foster child's sexual orientation, gender identity, and gender expression")."    Defendants deny that the Joneses are not currently a DCF licensed resource family.    Except as expressly admitted, the remaining allegations in this paragraph are denied.

90.    Denied.

91.    Defendants admit that, upon information and belief, Mr. and Mrs. Schrock live in Middlesex County, Massachusetts, and have two biological children.    Defendants further admit that the Schrocks became a licensed resource family in 2019 and that they were no longer licensed in 2025.    Defendants admit that the Schrocks were not the subject of any allegations of abuse or neglect.    Upon information and belief, Defendants state that DCF records reflect five prior foster care placements with the Schrocks, two of which involved the same foster child for different periods of time, meaning that DCF records indicate the Schrocks have provided care to four different foster children in foster care placements.    Defendants admit that the Schrocks provided care to additional children in DCF custody through respite and emergency babysitting services. Defendants state that DCF records indicate the most recent placement was for one day in March

2025 and that, before that, the most recent prior placement was for approximately two weeks in October 2023.

92.    Defendants admit that the Schrocks are no longer a licensed resource family in 2025.   The remaining allegations in paragraph 92 are denied.

93.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 93 of the Complaint.

94.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 94 of the Complaint.

95.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 95 of the Complaint.

96.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 96 of the Complaint.

97.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 97 of the Complaint.

98.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 98 of the Complaint.

99.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 99 of the Complaint.

100.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 100 of the Complaint.

101.    Defendants lack knowledge or information sufficient to enable them to admit or deny the allegations of paragraph 101 of the Complaint.

102.    Defendants lack knowledge or information sufficient to enable them to admit or

deny the allegations of paragraph 102 of the Complaint.

103.    Denied.

104.    Defendants deny that DCF engaged in "anti-religious bigotry" or "singled out" the Schrocks.    The allegations in paragraph 105 purport to summarize portions of a training module and a conversation involving the Schrocks.    Defendants aver that DCF records indicate that "During the MAPP meeting that included GLBTQ youth [the Schrocks] were unfamiliar with this type of child/or adult and they did not have any friends or family that were GLBTQ. They expressed that they would need guidance around fostering a child that may be questioning their identity. They would seek advice from their family respource [*sic*] worker in order to help the child. Although they admit it might be a new experience for them, they will be able to accept the child and care for the child with no hesitation."    Defendants further aver that DCF records reflect that a conversation occurred "after" the MAPP training where "The MAPP leaders wanted to ensure that the Schrock's [*sic*] clearly understood the needs of GLBTQ youth. The leaders felt the Schrocks were appropriate and handle the discussion with sensitivity."    Except as expressly admitted, Defendants deny the remaining allegations in paragraph 104.

105.    The allegations in paragraph 105 purport to summarize portions of a conversation between Mr. and Mrs. Schrock (individually or together) and DCF.    Defendants aver that DCF records reflect that a conversation occurred "after" the MAPP training where "The MAPP leaders wanted to ensure that the Schrock's [*sic*] clearly understood the needs of GLBTQ youth. The leaders felt the Schrocks were appropriate and handle the discussion with sensitivity." Defendants lack knowledge or information sufficient to enable them to admit or deny whether the Schrocks answered questions honestly.    Except as expressly admitted, the remaining allegations in paragraph 105 are denied.

106.    The allegations in paragraph 106 purport to summarize portions of a conversation between Mr. and Mrs. Schrock (individually or together) and a "licensing agent."    Defendants aver that DCF records reflect that, on December 2, 2024, a DCF social worker emailed the Schrocks to inform them that DCF would be scheduling a home visit as part of its annual assessment of the Schrocks.    Except as admitted, the allegations in this paragraph are denied.

107.    Defendants aver that DCF's record indicate that, on February 24, 2025, a social worker at DCF emailed the Schrocks stating, in relevant part, that "I will have to schedule a brief visit to have you sign the Foster Parent Agreement," and that the same social worker provided the Schrocks with a copy of a foster parent agreement by email on March 4, 2025.

108.    The allegations in paragraph 108 purport to summarize portions of a conversation between Mr. and Mrs. Schrock (individually or together) and a "resource worker."    Defendants aver that DCF's record indicate that, on March 19, 2025, Mrs. Schrock sent an email to a DCF social worker indicating that "We did find one challenge with the wording of item 6.    Of course, support and respect for the children is a minimum requirement for care.    But we'd like to discuss 'affirm the foster child's sexual orientation, gender identity, and gender expression.'    Our religious beliefs do not allow us to carry out this particular aspect of the requirement."    Defendants aver that DCF records indicate that, in response, Ms. Petty responded to that email on March 21, 2025, offering "an opportunity to meet and touch base as a team regarding your reservations/concerns about being an LGBTQ+ affirming home."    Except as expressly admitted, the remaining allegations in paragraph 108 are denied.

109.    Defendants aver that DCF's records reflect an email was sent by Mrs. Schrock on March 19, 2025 which contains the quoted text, but state that the Complaint's text is an incomplete excerpt of the email.

23

110.    The allegations in paragraph 110 purport to summarize portions of a conversation between Mr. and Mrs. Schrock (individually or together) and DCF personnel, including Ms. Petty. Defendants aver that DCF records reflect that a meeting took place via Microsoft Teams on March 27, 2025, including the Schrocks and several employees of DCF, including Ms. Petty. Defendants deny that Ms. Petty made any statements about what is expected of foster parents in society in general.    To the extent the allegations in paragraph 110 misstate or mischaracterize the content of any conversation or what Mr. or Mrs. Schrock communicated to DCF, they are denied. The remaining allegations in paragraph 110 are denied.

111.    The allegations in paragraph 111 reference and quote an email purportedly sent by Mr. and/or Mrs. Schrock to DCF.    Defendants aver that DCF's records reflect an email was sent by the Schrocks on March 28, 2025, which contains the quoted text, but state that the Complaint's text is an incomplete excerpt of the email.

112.    Upon information and belief, Mr. and Mrs. Schrock were no longer a licensed resource family as of July 29, 2025.

**CLAIMS FOR RELIEF**

Claim I: First Amendment Free Speech

113.    Defendants incorporate their answers to all preceding paragraphs.

114.    Admitted only that the First Amendment states this.

115.    Denied.

116.    Denied.

117.    Denied.

118.    Denied.

119.    Denied.

120.    Denied.

121.    Denied.

122.    Denied.

<u>Claim II: First Amendment Free Speech—Overbreadth</u>

123.    Defendants incorporate their answers to the preceding paragraphs.

124.    Denied.   The Complaint's use of the defined term "Gender Identity Policy" is vague and purports to characterize the contents of multiple documents, including the foster parent agreement and various regulations and policies, and the characterization of those documents in paragraph 124 is denied.

125.    Denied.

126.    Denied.

127.    Denied.

<u>Claim III: First Amendment Free Exercise of Religion</u>

128.    Defendants incorporate their answers to the preceding paragraphs.

129.    Admitted.

130.    Plaintiffs' characterization of the standard for demonstrating a free-exercise violation is incomplete and therefore denied.

131.    Denied.

132.    Plaintiffs' characterizations of the requirements of DCF's foster parent agreement are incomplete and misleading and are therefore denied.

133.    Denied.

134.    Denied.

135.    Defendants admit that its regulations and policies do not contain any mechanism

for exemption from the regulatory requirement at 110 CMR 7.104(1)(d) that licensed foster parents must "support[] and respect[] a [foster] child's sexual orientation or gender identity."    Defendants admit that a limited number of licensing requirements within 110 CMR 7.104 and 7.105 contain express waiver provisions and Defendants incorporate their response to paragraph 44. Defendants admit that DCF's assessments of resource families are specific to each resource family, and that there are necessarily some individualized assessments at various points in those very complex procedures, but Defendants deny that DCF employees have "discretion" about applying regulatory requirements equally to different families and incorporate their response to paragraph 52.

> 136.    Denied.

> 137.    Denied.

> 138.    Denied.

> 139.    Denied.

> 140.    Denied.

> 141.    Admitted that *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 525 n.1 (2022) states this.

> 142.    Denied.

> 143.    Denied.

> 144.    Denied.

> 145.    Denied.

Claim VI [*sic*]: Fourteenth Amendment Equal Protection

> 146.    Defendants incorporate their answers to all preceding paragraphs.

> 147.    Admitted.

148.    Denied.

149.    Denied.

150.    Denied.

151.    Denied.

**PRAYER FOR RELIEF**

The remainder of the Complaint, including but not limited to paragraphs a-g, constitutes Plaintiffs' request for relief, to which no response is required.    To the extent that a response may be deemed required, Defendants deny that Plaintiffs are entitled to any relief.

**REQUEST FOR JURY TRIAL**

Defendants demand a trial by jury on all claims and issues so triable.

**AFFIRMATIVE DEFENSES**

1.    The Eleventh Amendment bars suits against state officials in their official capacities, and bars Plaintiffs from recovering money damages from state officials acting in their official capacities.

2.    The Commonwealth of Massachusetts has not waived sovereign immunity and any and all Massachusetts officials acting in their official capacities are entitled to that immunity.

3.    Defendants are absolutely immune from suit for money damages for actions taken in their official capacities.

4.    Defendants are entitled to a finding of qualified immunity from suit and from liability and are immunized in their actions relating to any matters described in the Complaint arising from actions taken in their individual or personal capacities.

5.    The Complaint fails to state a claim upon which relief may be granted, because Defendants did not violate any of Plaintiffs' constitutional rights.

27

6.      Defendants did not act in an unreasonable or unlawful manner.

7.      Existing federal case law at the time of the events described in the Complaint supported the constitutionality of Defendants' conduct in this matter.

8.      Defendants acted in all times in good faith, reasonably, and justifiably, and acted with sufficient legal cause, and in conformity with settled principles of constitutional or other law.

9.      Each Defendant is expressly not subject to joint-and-several liability for the actions of any other party.

10.     Plaintiffs' claims are waived in whole or in part by the actions or conduct of Plaintiffs and their agents or servants.

11.     Plaintiffs failed to exhaust their remedies, including but not limited to their state administrative remedies, before filing this 42 U.S.C. § 1983 suit.

12.     Plaintiffs are not entitled to either declaratory or injunctive relief.

13.     Defendants hereby give notice that they intend to rely upon such other and further defenses as may become available or apparent during discovery proceedings in this action and hereby reserve the right to amend their Answer and to assert any such defense by appropriate motion.


Respectfully Submitted,

DEFENDANTS

By and through their Attorneys,

ANDREA JOY CAMPBELL
ATTORNEY GENERAL

/s/ *Michael Shiposh*
Michael Shiposh (BBO No. 680131)
Benjamin E. Bryant (BBO No. 714077)
Grace Gohlke (BBO No. 704218)
Assistant Attorneys General
One Ashburton Place
Boston, MA 02108
(617) 963-2388, 2275, or 2527
michael.shiposh@mass.gov
benjamin.e.bryant@mass.gov
grace.gohlke@mass.gov

Dated: November 3, 2025

## CERTIFICATE OF SERVICE

I certify that this document, filed through the Court's ECF system, will be sent

electronically to all registered participants as identified on the Notice of Electronic Filing (NEF)

and that paper copies will be sent to those indicated as non-registered participants by first-class

mail on November 3, 2025.

/s/ *Grace Gohlke*
Grace Gohlke